566 A.2d 926

**HANSEN PROPERTIES III, a Pennsylvania Limited Partnership, Appellant,**

v.

**ZONING HEARING BOARD OF HORSHAM TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1989.

Decided Nov. 28, 1989.

Frank W. Jenkins, with him, Stephen P. Imms, Jr., Jenkins, Tarquini & Jenkins, Ambler, for appellant.

Paul D. North, Sr., Duffy, North, Wilson, Thomas & Nicholson, Hatboro, for appellee.

Before CRUMLISH, Jr., President Judge, and COLINS and McGINLEY, JJ.

OPINION

CRUMLISH, Jr., President Judge.

Hansen Properties, III (Hansen), appeals a Montgomery County Common Pleas Court order sustaining the Horsham Township Zoning Hearing Board's (Board) denial of two variance requests. We affirm in part and reverse in part.

Hansen is the owner of Oak Terrace, a private country club (club) located in a residentially zoned district that allows only single-family detached dwellings.[1] The 161–acre property consists of a golf course, the "manor" house of the original property (manor house) and a reconverted barn where the clubhouse and its restaurant are located. After purchasing the property in 1981, Hansen extensively renovated the manor house, converting it into his personal corporate office space. In 1985, he began allowing public patronage of the club's private restaurant. The township subsequently issued Hansen a cease-and-desist order, informing him that these uses violated the township zoning ordinance. Only then did Hansen request variances to legitimize, by permit, corporate commercial use of the manor house and public access to the club restaurant. In the alternative, he requested an interpretation of Ordinance § 701.1(g)(1)(b) to allow public use of the club restaurant as "incidental" to the permitted use. The Board denied both variance requests, finding that Hansen had not demonstrated the premises were subject to unnecessary hardship and that public patronage of the private restaurant exceeded the permitted use contemplated by the township ordinance. The common pleas court, sitting en banc, affirmed.

First, Hansen contends that the Board erred in concluding that the ordinance does not impose unnecessary hard-

1. The country club is a legal non-conforming use the township ordinance permitted as a special exception by the Horsham Township Zoning Code, Ordinance § 701.1(g).

ship on his use of the manor house. We disagree.[2]

A landowner seeking a use variance must establish that (1) the ordinance imposes an unnecessary hardship on the property; (2) that results from the property's unique physical characteristics; (3) granting the variance would not have an adverse impact on the health, safety and welfare of the general public; (4) the hardship is not self-inflicted; and (5) the variance sought is the minimum that will afford relief. Section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10912; *Bellosi v. Zoning Hearing Board of Clifton Heights Borough*, 96 Pa.Commonwealth Ct. 83, 506 A.2d 997 (1986). Unnecessary hardship, in turn, results when the property cannot be used for any permitted purpose, or for a permitted purpose only at prohibitive expense, rendering it practically valueless if the variance is not granted. *Keystone Sportsmen Association of Lycoming County, Inc. v. Zoning Hearing Board of Delaware Township*, 100 Pa. Commonwealth Ct. 384, 514 A.2d 974 (1986). Moreover, "[a] mere showing of economic hardship, standing alone, does not justify the granting of a variance." *Buckingham Developers, Inc. Appeal*, 61 Pa. Commonwealth Ct. 408, 412, 433 A.2d 931, 933 (1981).

Our review of the record discloses that Hansen has not established the threshold requirement of unnecessary hardship. Here, the Board found that Hansen's present use of the property as a country club and golf course was reasonable.[3] On appeal, Hansen has failed to demonstrate why these operations cannot continue or why the property's unique physical characteristics preclude future development as single-family detached dwellings. Although Hansen's uncontroverted testimony established that single or multi-

2. Where the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion and whether the board's findings are supported by substantial evidence. *Kadi v. Zoning Hearing Board of the Township of Lynn*, 73 Pa. Commonwealth Ct. 295, 457 A.2d 1042 (1983).

3. Board's Finding of Fact No. 12, Record Item Exhibit 3.

family occupation of the manor house was economically impracticable,[4] that testimony does not render the entire 161 acres valueless as zoned or void the use of the total property as a country club or golf course. Thus, because viable use of the land exists, we conclude that the Board did not abuse its discretion in denying the variance.[5] Our ruling, however, does not preclude all commercial use. Hansen may use the manor house for any commercial activity that is incidental to the permitted use, such as a pro shop, management offices, or other activities ordinarily related to a country club's purposes.

Hansen next argues that the Board erred in concluding that Ordinance § 701.1(g)1 does not permit a private country club to operate a public restaurant on its premises as a commercial activity "incidental to the underlying permitted use." [6]

Provisions of a zoning ordinance must be given their plain, ordinary meaning with all doubts resolved in favor of the landowner. *Appeal of Mt. Laurel Racing*

---

4. Notes of Testimony (N.T.) of Elmer F. Hansen, 1/12/87, p. 12.

5. Hansen cites *Logan Square Neighborhood Association v. Zoning Hearing Board of Adjustment, City of Philadelphia,* 32 Pa. Commonwealth Ct. 277, 379 A.2d 632 (1977), and *Zoning Hearing Board of the Township of Indiana v. Weitzel,* 77 Pa. Commonwealth Ct. 108, 465 A.2d 105 (1983), as holding that a landowner's financial burden constitutes unnecessary hardship when use of the property's building for any permitted use is possible only through extensive reconstruction. In those cases, however, this Court's holdings were premised on the fact that each landowner sought a variance for his building which was located on a small parcel of land. Thus, the Court's conclusion that more than mere economical hardship existed was based on its determination that the buildings were clearly integral to the entire property's use. As noted above, Hansen has not established that denying the variance here will result in use of the *entire* premises only at a prohibitive expense.

6. Section 701.1(g)1 states that:
   (g) The following uses may be permitted when authorized by the Township Zoning Board as a special exception:
   1. Privately owned low density outdoor recreational area or use, such as a park, riding academy, golf course, provided that:
   (b) No commercial activity shall be permitted except for charging admission, the sale of refreshments, or such other purposes as clearly incidental to the permitted use.

*Association,* 73 Pa.Commonwealth Ct. 531, 458 A.2d 1043 (1983). Absent a limiting legislative definition, ordinance terms permitting a use must be presumed to have been chosen for their broadest application. *Id.*

■ It is clear that Section 701.1(g) allows a private golf course and the operation of a restaurant for its club members as a special exception as a permitted use. The ordinance also allows *commercial* activity that is *incidental* to this permitted use.[7] Here, the uncontroverted testimony of Thomas Hanratty, club manager of neighboring North Hills Country Club, discloses that a public restaurant would help support the club's overall activities in much the same manner as when the club rents its facilities to members and non-members to allow banquets and weddings.[8] Were this a privately owned *public* golf course, which use would be permitted by Section 701.1(g) of the Ordinance, public dining facilities would constitute an incidental use. Moreover, both Hansen and Hanratty testified that without these outside activities, operating a dining facility during the non-golfing season is impossible.[9] Although the proposed public restaurant would seat only sixty individuals, it would remain open twelve months of the year. This would help maintain the present dining facilities which are an integral part of the club's successful operation.

Based on this testimony, we conclude that the ordinance's language allowing the club to conduct commercial activity "incidental to the underlying permitted use" encompasses the operation of a public restaurant on the premises of its

---

7. Although the ordinance does not provide a definition of "incidental use," Webster's Third New International Dictionary 1142 (1981) defines "incidental" as "subordinate ... or attendant in position or significance." The term "customarily incidental," as used in land use regulation law, has been defined as "a use which, when present, is usually not the main use but ... secondary or accessory to some other use." *Klein v. Township of Lower Macungie,* 39 Pa.Commonwealth Ct. 81, 395 A.2d 609 (1978).

8. N.T., Thomas Hanratty, 1/12/87, p. 36.

9. N.T., Hansen, p. 17; N.T., Hanratty, pp. 37–39.

private golf club.[10]

Accordingly, the order of the common pleas court is affirmed in part and reversed in part.

## ORDER

That portion of the Montgomery County Common Pleas Court order, No. 87–07940 dated December 30, 1988, denying a variance for commercial use of the manor house is affirmed. We reverse the part which determines that the township ordinance does not allow the operation of a public restaurant on a private golf club as "incidental" commercial activity.

---

**10.** Our disposition here makes it unnecessary to address Hansen's contention that the Board erred in denying his variance application to permit public use of the club's private restaurant.