601 A.2d 1362

**Claudia HILL and Raymond Roberts and other interested landowners, Appellants,**

**v.**

**The ZONING HEARING BOARD OF CHESTNUTHILL TOWNSHIP, Appellee.**

**Claudia HILL and Raymond Roberts and other Interested Landowners,**

**v.**

**ZONING HEARING BOARD OF CHESTNUTHILL TOWNSHIP and West End Mining & Processing Co., Inc.**

**Appeal of WEST END MINING & PROCESSING CO., INC.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1991.

Decided Jan. 9, 1992.

Petition for Allowance of Appeal Denied June 16, 1992.

John Molnar, for appellants/appellees Hill et al.

Lenard L. Wolffe, for appellant/appellee West End Min. and Processing Co., Inc.

Before CRAIG, President Judge, PELLEGRINI, J., and NARICK, Senior Judge.

CRAIG, President Judge.

Claudia Hill, Raymond Roberts and several other landowners (the objectors) appeal an order of the Court of Common Pleas of Monroe County affirming the zoning hearing board's decision to grant West End Mining and Processing Company (WEMPCO) a certificate of non-conforming use. We reverse in part.

The issues in this case are (1) whether the objectors have standing to challenge the board's decision to grant WEMPCO a certificate of non-conforming use, (2) if the objectors have standing to challenge the board's decision, whether they are entitled to the protections afforded by the pending ordinance doctrine when municipal officials have not written a zoning ordinance which expressly negates the doctrine's protections, but have informally indicated that they will not claim the doctrine's protections, and (3) whether there was a valid non-conforming use on the land on the date that the ordinance became pending.

The facts of this case, as found by the zoning hearing board, are as follows. On February 16, 1983, Robert Tavianini purchased a parcel of land in Chestnuthill Township known as the Edwardson tract. The Edwardson tract is adjacent to two other tracts of land owned by Tavianini which are used for mining purposes. Tavianini leased the Edwardson tract to his father, Evo Tavianini, who mined

the tract pursuant to a small non-coal surface mining permit issued by the Department of Environmental Resources (DER) on September 25, 1985.

Evo Tavianini violated the terms of the permit and on April 15, 1987, the DER effectively revoked his permit to mine the Edwardson tract and ordered him to cease and desist from any mining activity and to commence reclamation of the land. The DER and Evo Tavianini executed a consent order on December 11, 1987, and Robert Tavianini and his employees continued the reclamation project.

On March 17, 1988, Chestnuthill Township published an advertisement announcing that a public hearing would be held to consider a draft of the township's first zoning ordinance. The township's planning commission and board of supervisors held several public hearings.

On April 6, 1988, WEMPCO purchased the Edwardson tract from Tavianini and, on October 31, 1988, the DER granted WEMPCO a small non-coal surface mining permit.

On January 17, 1989, the supervisors enacted the township's first zoning ordinance, which classified the Edwardson tract as R–1 residential.

On June 27, 1989, the township's zoning officer issued a certificate of non-conformance to WEMPCO to use the land for "mineral extraction and processing, millwork and other wood processing." The aspect of the certificate approving the wood processing business permitted WEMPCO to take in

unusable wood products such as stumps (waste from lumbering and kindred clearing operations) and altering same by grinding, chipping or processing into wood mulch, root mulch, chips ... principally for reuse.

R.R. 34a.

The objectors appealed the grant of the certificate to the zoning hearing board, arguing that the board should have applied the pending ordinance doctrine and denied the certificate. On September 21, 1990, the board denied the appeal, concluding that the supervisors had decided not to apply the

doctrine to any zoning matter and that a decision to apply or not to apply the doctrine lies within the discretionary power of the supervisors.

The objectors appealed the board's decision to the court of common pleas, arguing that the board erred in not applying the pending ordinance doctrine. The trial court denied the objectors' appeal, concluding that the supervisors have the sole discretionary power to elect not to invoke the pending ordinance doctrine and, accordingly, that the objectors were not entitled to the doctrine's benefits.

The objectors contend that they are entitled to the doctrine's benefits because there was no non-conforming use on the Edwardson tract when the ordinance became pending and that WEMPCO "raced" the ordinance by hastily establishing a non-conforming use before the ordinance was enacted.

WEMPCO filed a cross-appeal, arguing that it had established a valid non-conforming use which continued through all times relevant to these proceedings and that, even if the pending ordinance doctrine were applicable to the Edwardson tract before the ordinance was enacted, WEMPCO has a right to continue the use on the land.

■ Our scope of review in zoning appeals where the common pleas court took no additional evidence is limited to a determination of whether the board abused its discretion or committed an error of law. *Beecham Enterprises, Inc. v. Zoning Hearing Board of Kennedy Township,* 125 Pa.Commonwealth Ct. 20, 556 A.2d 981 (1989).

### 1. DO THE OBJECTORS HAVE STANDING TO CHALLENGE THE BOARD'S DECISION?

■ The first question we must address is whether the objectors have standing to challenge the board's decision on the basis of the board's failure to invoke the pending ordinance doctrine, and, if so, whether the objectors are entitled to the doctrine's protections in this case.

Sections 909.1(a)(3) and 913.3 of the Pennsylvania Municipalities Planning Code (MPC),[1] 53 P.S. §§ 10909.1(a)(3) and 10913.3, provide that "any person aggrieved" by a zoning officer's registration of a non-conforming use may appeal the officer's decision to the zoning hearing board.

An aggrieved person is one who has a direct interest in a zoning matter that is directly affected by the action they seek to challenge. *D.E. Street, Inc. v. Zoning Hearing Board of Borough of West York,* 103 Pa.Commonwealth Ct. 127, 519 A.2d 1093 (1987).

In this case, the objectors are landowners who live adjacent to or in close proximity to the Edwardson tract (R.R. 144a, 185a, 218a, 235a, 249a and 257a) and whose concerns include an increase in traffic and noise. (168a, 190a, 221–222a, 239–240a, 252a and 259–260a.) The objectors have a direct interest that is adversely affected by the township officer's decision to grant WEMPCO a certificate of nonconforming use and accordingly have standing to challenge its issuance.

## 2. ARE THE OBJECTORS ENTITLED TO THE PROTECTIONS OF THE PENDING ORDINANCE DOCTRINE?

Because the objectors have standing to challenge the zoning hearing board's decision, we must determine whether they are entitled to the protections afforded by the pending ordinance doctrine when, as here, the municipal officials have not written a zoning ordinance which expressly negates the doctrine's protections, but have informally indicated that the municipality would not rely upon the doctrine.

WEMPCO argues that objectors cannot compel the board to apply the pending ordinance doctrine when a governing body, in its discretion, decides not to invoke the doctrine. We disagree.

Under the judicially-created pending ordinance doctrine

---

1. Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988.

a municipality may properly refuse a building permit for a land use repugnant to a *pending* and later lawfully enacted zoning ordinance even though the application for a permit is made when the intended use conforms to existing regulations.

*Honeybrook Township v. Alenovitz,* 430 Pa. 614, 623, 243 A.2d 330, 334 (1968). (Emphasis added.)

A zoning ordinance is pending when a municipality has resolved to consider a particular zoning scheme and has advertised its intention to hold public hearings on the scheme. *Id.*

The purpose of the doctrine is to "protect municipalities from the establishment of nonconforming uses on the eve of a zoning change." *Washington Township v. Slate Belt Recycling Center,* 58 Pa.Commonwealth Ct. 620, 624, 428 A.2d 753, 755 (1981).

WEMPCO argues that the decision whether to apply the doctrine is purely discretionary and that, because the supervisors decided early in the planning stages not to use the doctrine's protections, the objectors are not entitled to those protections.

However, the fact that a municipality "may" invoke the doctrine as a means to refuse to approve a land use repugnant to a pending ordinance does not in itself suggest that municipalities alone can invoke the doctrine.

An objector with standing to challenge a zoning hearing board's decision to grant a certificate of nonconforming use may challenge the board's decision by raising the pending ordinance doctrine if the municipal officials have not written a zoning ordinance which expressly negates the doctrine.

In this case, the supervisors only indicated informally that they would not use the doctrine's protections. The supervisors did not include any provision in the township's zoning ordinance which expressly negates the doctrine or which provides that non-conforming uses established during

the pendency of the enactment process should be permitted to continue. (R.R. 29a, 357–358b and 363b.)

Therefore, the objectors are entitled to raise the doctrine and invoke the doctrine's principles. Thus, if WEMPCO had not established a valid non-conforming use on the Edwardson tract before the ordinance became pending, it may not "race" the pending ordinance by establishing a non-conforming use on the land before the ordinance's enactment in an attempt to circumvent the proposed ordinance.

### 3. IS THE PENDING ORDINANCE DOCTRINE APPLICABLE IN THIS CASE?

■ WEMPCO argues, however, that the pending ordinance doctrine is not applicable in this case because the final ordinance varied substantially from the original version. The pivotal question requires us to focus on an evaluation of the number of changes in the proposed ordinance and their degree. For an ordinance to be pending, a municipality must have resolved to consider a "particular zoning scheme." *Board of Supervisors of Greene Township v. Kuhl*, 112 Pa.Commonwealth Ct. 624, 536 A.2d 836 (1988), *appeal denied*, 520 Pa. 579, 549 A.2d 139.

On March 17, 1988, the supervisors advertised the first public hearing to consider a draft of the ordinance. The record reveals that, under an early 1988 draft of the ordinance, the Edwardson tract would be in a residential zone (R.R. 333b) and that the ordinance proposed at the township's first public meeting on April 7, 1988, (R.R. 507–508a) and at a meeting on April 21, 1988, (R.R. 80a) included the Edwardson tract in a residential zone.

Although the board found that, during the planning stages, the Edwardson tract was located in an industrially-zoned area (F.F. No. 100), there is no evidence of the number of times that the ordinance was amended or the dates that those changes were made. Therefore, the evidence is insufficient to support WEMPCO's claim that the

ordinance was amended so many times that the pending ordinance doctrine cannot be invoked.

WEMPCO also argues that the objectors cannot rely upon the pending ordinance doctrine because the township did not act diligently in enacting the ordinance. *See, e.g., Borough of Brookhaven v. Park*, 47 Pa.Commonwealth Ct. 223, 408 A.2d 176 (1979). This requirement balances a landowner's right to proceed with the development of his land with the municipality's right to adopt a satisfactory zoning scheme.

In this case, the ordinance became pending on March 17, 1988, the date that the township advertised the first public hearing to consider a zoning proposal which would affect the landowner's use of the tract. The ordinance was enacted on January 17, 1989. In light of the complexity involved in developing a zoning scheme for an entire municipality and the number of public hearings that must be held, our conclusion is that the municipality acted diligently in enacting the ordinance.

Therefore, the objectors were entitled to invoke the pending ordinance doctrine to protect their interest against the establishment of a non-conforming use during the pendency of the ordinance enactment process.

### 4. IS THERE A VALID NON-CONFORMING MINING USE?

The next question we must address is whether a valid non-conforming mining use actually existed on the Edwardson tract before the date that the ordinance became pending.

WEMPCO has the burden of establishing that a valid non-conforming use existed. *See e.g., Overstreet v. Zoning Hearing Board of Schuylkill Township*, 49 Pa.Commonwealth Ct. 397, 412 A.2d 169 (1980). However, once a non-conforming use has been established, the objectors bear the burden of proving that WEMPCO intended to abandon the use and that the use was actually abandoned. *Spencer v. Zoning Hearing Board of Rockland Township*, 111 Pa.Commonwealth Ct. 111, 533 A.2d 497 (1987).

The objectors argue that neither Tavianini or WEMPCO conducted any mining activity on the Edwardson tract from April, 1987, when the DER revoked Tavianini's mining permit, until after the ordinance-pending date of March 17, 1988, namely November, 1988, when WEMPCO started excavation of the land. We disagree. There is substantial evidence in the record to support the board's findings that a non-conforming mining operation existed when the ordinance became pending and that the use continued until passage of the ordinance.

The board found, and the objectors do not dispute, that Tavianini was mining the Edwardson tract when the DER issued its cease-and-desist order in April, 1987, and ordered Tavianini to commence reclamation of the land. (F.F. 29.) The objectors argue that the use was abandoned after the DER issued its cease-and-desist order.

However, on May 18, 1987, DER officials inspected the Edwardson tract and found that Tavianini had started reclamation of the land. (R.R. 78–79a.) The reclamation project was continuing in December of 1987. (R.R. 503b–504b.) The DER considers reclamation to be part of "surface mining" as defined in 52 P.S. § 3303. (R.R. 296a, 339a–340a.) Therefore, the non-conforming use was continuing throughout 1987.

On January 6, 1988, Lawrence Simon and Tavianini signed a letter of understanding and agreement with regard to the sale of the Edwardson tract to Simon. On April 6, 1988, Simon purchased the tract and Tavianini's two adjacent parcels. WEMPCO is a subsidiary of Simon's company, LTS, and WEMPCO was listed as Simon's designee under the agreement of sale.

Various activities undertaken as part of the sale, including on-site inspections and tests and other field work, were conducted through March, 1988. The record is replete with testimony and evidence that these and other activities, which continued through 1988, were conducted as part of WEMPCO's plan to use the Edwardson tract as part of a

large scale mining operation. (*See e.g.* R.R. 367–373a, 376a, 411–412a, 80b, 259–260b and 307–308b.)

According to the objectors, although there is substantial evidence that WEMPCO intended to continue the mining activity, intent is insufficient in this case because there is no objective evidence that the activity continued. As noted above, however, there was activity associated with the mining business before and after the ordinance-pending date of March 17, 1988.

In addition, abandonment of a non-conforming use requires proof of an intent to abandon the use as well as actual abandonment. *Smith v. Board of Zoning Appeal of City of Scranton*, 74 Pa.Commonwealth Ct. 405, 459 A.2d 1350 (1983). The record fully supports the board's finding that Tavianini and WEMPCO demonstrated intent to continue mining the Edwardson tract. Accordingly, the use was not abandoned.

Because the mining operators continued the mining activity, the mining business was never abandoned; hence, we need not address the objector's argument that WEMPCO improperly "raced" the pending ordinance and established the use before the ordinance was enacted.

## 5. IS THE WOODCHIPPING USE A VALID NON-CONFORMING USE OR IS IT RULED OUT BY THE PENDING ORDINANCE DOCTRINE?

■ However, the record reveals that WEMPCO's woodchipping business did not exist before the ordinance became pending and therefore is not a valid non-conforming use.

As noted above, the ordinance became pending on March 17, 1988 and, on April 20, 1988, WEMPCO received a proposal to conduct a feasibility study associated with the chipping business. (R.R. 375a and 409–410b.) DER later informed WEMPCO that it would not need a DER permit to conduct the woodchipping business (R.R. 387–388a) and WEMPCO purchased a woodchipper, which was not delivered until late December, 1989. (R.R. 97–98b.)

The woodchipping business included "bringing tree stumps in" and processing the wood into mulch, which was sold for profit. (R.R. 374a, 383–384a.) The woodchipping operation was separate and distinct from the mining operation.

In this case, there is no evidence that any woodchipping business existed on the Edwardson tract until late 1988 or early 1989, just before enactment of the zoning ordinance. WEMPCO sought to establish a non-conforming use in the face of the pending ordinance and did not start operations of the woodchipping business until only days before the ordinance was enacted, and when it well knew of the township's intent to zone the Edwardson tract residential when it established the operation. WEMPCO brought a woodchipper on the property just a month before the ordinance was enacted and started grinding stumps only days before the enactment, well after March 17, 1988.

Because WEMPCO improperly established the woodchipping business after the ordinance-pending date, the zoning officer erred in granting a certificate of non-conforming use to continue the woodchipping operations.

The approval of the mining activity must be affirmed, but the woodchipping allowance must be reversed.

## ORDER

Now, January 9, 1992, the Order of the Court of Common Pleas of Monroe County, dated February 8, 1991, at No. 2837–C–1990, is affirmed in part. That portion of the Order affirming the Zoning Hearing Board's decision to grant West End Mining Company a certificate of non-conforming use to mine the Edwardson tract is affirmed. That portion of the Order affirming the board's decision to grant West End Mining Company a certificate of non-conforming use to continue its woodchipping activity on the Edwardson tract is reversed.

PELLEGRINI, Judge, dissenting.

I dissent to that portion of the majority opinion that holds that surface mining on the property was a valid non-conforming use because it had not ceased by March 17, 1988, when Chestnuthill Township introduced a zoning ordinance classifying the property as R–1 Residential, a classification which did not permit surface mining.

In September of 1985, pursuant to a small non-coal surface mining permit, the property was mined, under lease, by the father of the owner of the property. At that time, the Township had not yet enacted a zoning ordinance. In April of 1987, DER revoked the mining permit, *ordered all mining to cease* and desist, and directed the owner to commence reclamation of the land. Reclamation continued to the end of 1987.

On January 6, 1988, a letter of understanding was entered by the owner to sell the property. The purchaser conducted on-site inspections and field work as part of the purchaser's plan to conduct large scale mining operations on the property. On April 6, 1988, the purchaser closed on the sale. However, on March 17, 1988, the Township had introduced its zoning ordinance, making it the pending ordinance date.

The majority holds that the reclamation work, together with the field work of the purchaser, establishes that there was no intent to abandon the zoning use either by the owner or the purchaser of the property. The keystone to the majority's holding is that DER considers reclamation to be part of surface mining as it interprets 52 P.S. § 3303. Otherwise, the majority would hold that the mining use would have ceased when the ordered reclamation work began.

Normally, to determine whether a non-conforming use is in existence requires an examination of the use on the property when the restriction was imposed and comparison with the use the owner contends is continued to see if they are substantially similar. By adopting DER's definition of

mining to determine if a non-conforming use exists, the majority departs from basing a non-conforming use on what "exists" in favor of an artificial definition adopted to effectuate some other unrelated regulatory purpose. What was underway on the day the restriction was imposed forbidding mining did not involve the extraction of minerals, but the exact opposite—reclamation.

Because the mining use had ceased when the zoning restriction was imposed, I would affirm the trial court's finding that there was no valid non-conforming use to conduct mining on the ordinance pending date of March 17, 1988.