531 A.2d 79

In Re: The Appeal of Farmland Industries, Inc. From the Decision of the Zoning Hearing Board of the City of Wilkes-Barre, Luzerne County, Pennsylvania. Farmland Industries, Inc., Appellant.

In Re: The Appeal of Farmland Industries, Inc. From the Decision of the Zoning Hearing Board of the City of Wilkes-Barre, Luzerne County, Pennsylvania. Farmland Industries, Inc., Appellant.

Argued November 17, 1986, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*David L. Williams, Morgan, Hallgren, Crosswell & Kane, P.C.,* for appellant.

*Mark A. Ciavarella, Jr., Lowery, Ciavarella & Rogers,* for appellee, Zoning Hearing Board of the City of Wilkes-Barre.

*Sanford S. Marateck, Lark, Makowski, Marateck & Konopka,* for appellee, Stop 'N Go Foods of Mid-Penn, Inc.

OPINION BY JUDGE PALLADINO, September 14, 1987:

Consolidated for our disposition herein are two appeals to this court filed by Farmland Industries, Inc. (Farmland) arising out of a single zoning case. The first case (1044 C.D. 1986) involves an appeal from an order of the Court of Common Pleas of Luzerne County (trial court) granting a petition to strike Farmland's appeal from an order of the Zoning Hearing Board of the City of Wilkes-Barre (ZHB). For the reasons which follow, we affirm this order of the trial court. The second case (2095 C.D. 1986) is an appeal from an order of the trial court requiring Farmland to post bond as a precondition to proceeding with the appeal in the trial court, pursuant to Section 1008 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11008. For the reasons which follow, we reverse this order of the trial court.

On May 28, 1985, Stop 'N Go of Mid Penn, Inc. (Stop 'N Go) filed an application with the ZHB requesting the following four variances in order to convert the property in question to a retail food convenience store with self-serve gasoline pumps:

1) a waiver of the rear yard setback from the required [twenty feet] down to [thirteen feet] to permit the construction of a retail food store with self service gasoline in a C-2 zone;

2) a waiver of the yard screening and fence required when a commercial use abuts a residential zone;

3) a waiver of the [four foot] strip of yard screening required for the off-street parking area; and

4) a waiver of the required front and side yard setbacks and [of] Sections 470.1 and 241 of the zoning ordinance (projection over the public right-of-way and visual obstruction at a corner

lot) to permit the installation of a free standing sign.

ZHB Op. at 1-2. (7/29/85)

The ZHB, on June 19, 1985, conducted a hearing on the requested variances. At that hearing, Farmland, through its counsel, attempted to enter an appearance and participate as an objector. The ZHB refused to permit Farmland to present testimony or to cross-examine Stop 'N Go's witnesses because it concluded that Farmland did not have standing to object.

On July 17, 1985, Farmland filed a Zoning Appeal Notice with the trial court asserting that the ZHB denied its right to due process of law by refusing to allow them to participate as objectors at the variance hearing; erred as a matter of law by denying it standing as an aggrieved person; and committed an abuse of discretion and error of law in granting the variances when Stop 'N Go failed to meet the general and specific standards of the zoning ordinance.

In response thereto, the ZHB filed an answer and a petition and rule to show cause why the appeal should not be stricken. The petition asserts that the trial court should strike the appeal because Farmland is neither a party nor a person aggrieved by the decision of the ZHB and, thus, lacks standing to appeal. Farmland filed an answer and new matter to this petition questioning the standing of the ZHB to be a party on appeal.

On October 3, 1985, the trial court heard oral argument on the petition to strike. The trial court ordered a remand to the ZHB to allow Farmland to develop a record in regard to the standing issue. The ZHB held the remand hearing on October 16, 1985 and then returned the case to the trial court. Thereafter, by order dated March 26, 1986, the trial court struck the appeal of Farmland, concluding that Farmland was not aggrieved by the grant of the variances to Stop 'N Go and did not have standing to appeal.

In the interim, on July 31, 1985, Stop 'N Go filed a petition and rule to show cause why Farmland should not be required to post bond, pursuant to Section 1008(4) of the MPC, 53 P.S. §11008(4), in order to be allowed to proceed with its appeal in the trial court. The rule to show cause was issued on Farmland on August 14, 1985. Farmland filed an answer thereto, denying the allegations of Stop 'N Go and objecting to the standing of Stop 'N Go to seek the posting of a bond on the basis that Stop 'N Go was not a party to this appeal and had not petitioned to intervene pursuant to Section 1009 of the MPC, 53 P.S. §11009.

The trial court held a hearing in this matter on September 4, 1985. Stop 'N Go filed a petition to intervene on September 10, 1985, which the trial court granted on September 26, 1985. In its petition to intervene, Stop 'N Go adopted all of the pleadings of the ZHB.

Thereafter, the trial court failed to rule on the matter of the bond. As stated herein, the trial court struck Farmland's appeal on March 26, 1986 and Farmland perfected an appeal to this court on April 11, 1986. Citing administrative error, the trial court, on June 26, 1986, held another hearing as to whether bond should be required and, by order dated July 3, 1986, ordered Farmland to post a Two Hundred Thousand Dollar ($200,000) bond within ten (10) days. Farmland did not post bond and appeals this order to our court. We consolidated the two appeals for argument and disposition *sua sponte*.

On appeal to this court, Farmland asserts that the ZHB has no standing to bring a motion to strike. Therefore, it asserts that it was error for the trial court to grant the motion to strike. Further, Farmland contends that Stop 'N Go cannot advance the issue of Farmland's lack of standing because it failed to raise this issue before the ZHB. Thus, Farmland asserts, the issue has

been waived. Lastly, Farmland contends that the trial court was without jurisdiction to require the posting of a bond because, pursuant to Pa. R. A. P. 1701(a), the trial court was divested of jurisdiction over this matter by the prior perfection of an appeal to this court. We will address each issue in order.[1]

## MOTION TO STRIKE

Citing *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 170 A. 867 (1934), and *National Development Corp. v. Township of Harrison,* 64 Pa. Commonwealth Ct. 54, 438 A.2d 1053 (1982), Farmland asserts that a zoning hearing board cannot be injuriously affected by the order of a reviewing tribunal and thus has no standing to appeal. While recognizing that *Lansdowne Borough* and *National Development Corp.* both involved situations where the ZHB was an appellant on appeal from an adverse decision of the court of common pleas, Farmland nevertheless contends that the ZHB has discarded its impartial quasi-judicial role and assumed an active, hostile, adversarial position in regard to Farmland "that is not authorized by the MPC nor sanctioned by the decisional law of this Commonwealth." Petitioner's brief at 9.

Our precedent, however, is to the contrary. We have stated that "[n]othing in the Pennsylvania Municipalities Planning Code . . . , 53 P.S. §10101 et seq., deprives a zoning hearing board of standing to defend its decision as an *appellee* before a court of common pleas or subsequently before an appellate court." *Marzo*

---

[1] Where the trial court takes additional evidence, our scope of review is limited to a determination of whether the trial judge committed an abuse of discretion or whether constitutional rights were violated or errors of law committed. *Rouse/Chamberlin, Inc. v. Board of Supervisors of Charlestown Township,* 94 Pa. Commonwealth Ct. 413, 504 A.2d 375 (1986).

*v. Zoning Hearing Board of Abington Township,* 30 Pa. Commonwealth Ct. 225, 233, 373 A.2d 463, 466 (1977). *See also* 2 R. RYAN, PA. ZONING LAW AND PRACTICE §9.5.5 (1981). As such, the ZHB has standing to assert any and all defenses in support of its decision.

Even if the ZHB did not have standing to bring the petition to strike Farmland's appeal, that petition would not fail on its face. Stop 'N Go, as intervenor, has adopted all of the pleadings of the ZHB. Therefore, Stop 'N Go would stand in the shoes of the ZHB for the purpose of prosecuting the Petition to Strike.

Citing *Cohen v. Zoning Board of Adjustment of the City of Pittsburgh,* 53 Pa. Commonwealth Ct. 311, 417 A.2d 852 (1980), Farmland contends that Stop 'N Go waived any objection to its standing by failing to raise the issue before the ZHB. We must note that at the hearing on the variance application, the ZHB raised the standing issue *sua sponte.* Therefore, the question of Farmland's standing clearly appears on the record and has been preserved for appeal.

By accepting Farmland's contention we would be holding that the preservation of an issue for appeal is personal to each party and that each party must note an objection on the record to be able to raise the issue on appeal. We do not believe this to be the law in this Commonwealth.

Section 753(a) of the Local Agency Law, 2 Pa. C. S. §753(a) states that "[a] party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency. . . ." Thus, it is apparent that the key

concerns are: 1) whether the issue was raised before the local agency, and 2) whether that objection appears in the record.

The rule is unconcerned with which party raised the issue. The rationale underlying the waiver rule has been articulated by our Supreme Court in *Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 117, 436 A.2d 179, 181 (1981), as follows:

> [T]he administrative law tribunal must be given the opportunity to correct its errors as early as possible; diligent preparation and effective advocacy before the tribunal must be encouraged by requiring the parties to develop complete records and advance all legal theories; and the finality of the lower tribunals' determinations must not be eroded by treating each determination as part of a sequence of piecemeal adjudications.

In light of the language of Section 753(a) of the Local Agency Law as well as the reasoning established by our case law, we decline to hold that Stop 'N Go cannot raise the lack of standing of Farmland merely because it was not the party which preserved the issue for the record.

Having concluded that both the ZHB and Stop 'N Go may raise the issue of Farmland's standing as an objector before the ZHB, we must now address whether the trial court erred in granting the ZHB's petition to strike the appeal.

Section 1007 of the MPC, 53 P.S. §11007, allows an appeal to the trial court from a "person aggrieved." In *Cablevision v. Zoning Hearing Board of Easton*, 13 Pa. Commonwealth Ct. 232, 320 A.2d 388 (1974), we held that a "person aggrieved" must have a direct interest in the subject matter of the litigation, which interest must be adversely affected by the action sought to be chal-

lenged. Further, that interest must be substantial, immediate, pecuniary and not a remote consequence of the judgment. *Id*.

In order to determine whether Farmland had standing to object, the trial court ordered a remand to enable the ZHB to make a record on this issue. At that hearing the following colloquy took place in an effort to establish Farmland's standing:

> ATTORNEY CROSWELL: Mr. Reger, what is your reason for wanting to be a party to these proceedings?

> MR. REGER: My reason, and you know, it's obvious to me that this store is going to go in. I can't stop this store and I know that. I'm not trying to stop this store. My reason for wanting to be a party to it is that all I want to see if justice is done, with respect a competitor having to live to the same rules and regulations that I have to live to.

> ATTORNEY CIAVARELLA: Mr. Reger, you tell me what effect putting the fence on this property at a certain location is going to have on your business?

> MR. REGER: I'm not objecting to a fence.

> ATTORNEY CIAVARELLA: What effect—

> MR. REGER: I am objecting to this business being allowed to have a sign, and getting a variance for a sign, when I was denied a variance for a sign on the same street.

> ATTORNEY CIAVARELLA: Fine. I understand your objection. What objection do you have—or what effect would the setback variance that they are requesting have on your business?

> MR. REGER: The setback has no effect on my business.

ATTORNEY CIAVARELLA: And what effect on your business would the fact that they are going to turn the building around have on your business?

MR. REGER: That part has none.

ATTORNEY CIAVARELLA: What about the fact that they may need or have requested variances for the parking requirements, have on your business?

MR. REGER: I didn't think they had a parking requirement variance.

ATTORNEY CIAVARELLA: Yard screening.

MR. REGER: There again is another—

ATTORNEY CIAVARELLA: What effect would it have on your business?

MR. REGER: I have had to spend more money to put my locations in, because I have had to do that, and they haven't.

ATTORNEY CIAVARELLA: What effect would it have on your business?

. . . .

MR. REGER: It's not having an effect on my business if they don't put the screening in. But what I'm trying to get across is, and I've stated before: I know that they are going to put a store there. I can't stop it and I know that. All I ask is that the Board handle their request the same way they handled my request.

. . . .

ATTORNEY CIAVARELLA: Is your objection with the Board, or is your objection with Stop-N-Go?

MR. REGER: My objection is with Stop-N-Go and the Board. I wouldn't mind if somebody else came in and had these things.

But when a competitor is allowed to go up the street from me, and is allowed to have a sign, and is allowed to delete landscaping from his plan, when I have asked the same thing, and I have not been allowed to do that. I have to operate down the street a half mile away without a free-standing identification sign.

N.T. at 41-45.

ATTORNEY CIAVARELLA: I want to know if special treatment gives rise for a party to have standing to appear before this Board. Is that what you're saying; is that your position?

ATTORNEY CROSWELL: Our position is that a combination of special treatment and an economic impact, which this applicant's store will have, and a competitive store that this store will have, if allowed to develop the store at a lesser cost, because, number one, they don't have to comply with certain of the requirement such as screening, of the Zoning Ordinance. And also because this particular applicant would be allowed to have a sign, where our client was not allowed to have a sign. And therefore, doesn't have the same visibility to the public. We think that that is discriminatory treatment, yes.

N.T. at 51.

The trial court concluded that Farmland lacked standing to appeal and was not a "person aggrieved" based upon their findings that Farmland's interest in this matter was not substantial and immediate. The above-quoted testimony constitutes substantial evidence to support those findings of fact. In fact, the testimony indicates that the variances had no effect on Farmland's property whatsoever. It is clear therefrom that Farmland is using this process to impede the location of a competitor in its trading area. We cannot allow

zoning appeals to be used as a method to deter free competition.[2] As such, we discern no abuse of discretion or error of law in the grant of the motion to strike Farmland's appeal.

## REQUIREMENT TO POST BOND

The final matter for our review is Farmland's appeal from the order of the trial court requiring them to post a Two Hundred Thousand Dollar ($200,000) bond in order to continue their appeal. Farmland asserts that pursuant to Pa. R.A.P. 1701(a), the trial court was without jurisdiction to impose this bond. Farmland contends that once an appeal has been filed with the Commonwealth Court, Pa. R.A.P. 1701(a) divests the trial court of any jurisdiction to proceed further in the matter. *Marlowe v. Zoning Hearing Board of Haverford Township,* 52 Pa. Commonwealth Ct. 224, 415 A.2d 946 (1980); *Grove v. Zoning Hearing Board of Thornbury*

---

[2] There is no dispute that an abutting property owner has standing to object to the grant of a variance to his neighbor as long as that variance will have a direct substantial, immediate and pecuniary impact upon the objector's property and the objector is located within the same municipality. *Cablevision.*

Further, even those persons in the "immediate vicinity," although not abutting landowners, would have standing to object if affected by the variance. *Esso Standard Oil Co. v. Taylor,* 399 Pa. 324, 159 A.2d 692 (1960). See also *Active Amusement Co. v. Zoning Board of Adjustment,* 84 Pa. Commonwealth Ct. 538, 543-544, 479 A.2d 697, 700 (1984), where, in response to an objection to the grant of a use certificate by a business competitior 4 doors away, we stated: "an objector, if not located outside of the municipality involved, . . . , could have, by reason of proximity in location, sufficient interest even to intervene at later stages of zoning litigation." (Citation omitted.)

However, it is clear that Farmland's property neither abuts nor is in the immediate vicinity of the Stop 'N Go parcel. Therefore, *Esso* and *Active Amusement* are not applicable to the case at bar.

*Township,* 40 Pa. Commonwealth Ct. 47, 397 A.2d 22 (1979).

The trial court claims that "administrative error" caused the delay between argument on the motion for the posting of bond, September 4, 1985, and the granting of the motion, July 3, 1986, which allowed the appeal to this court to intervene. Therefore, the trial court concluded that it had jurisdiction to enter the order because it was merely correcting formal errors in papers relating to the matter as allowed by Pa. R.A.P. 1701(b). For the following reasons, we must disagree.

Stop 'N Go filed a motion with the trial court to require Farmland to post bond in order to proceed with the appeal *in the trial court.* That motion was assigned to the Honorable BERNARD C. BROMINSKI, judge of the trial court, for disposition. The Honorable BERNARD J. PODCASY had earlier been assigned the underlying appeal. When Judge PODCASY struck the appeal, the motion to post bond was rendered moot. As such, Judge BROMINSKI should have dismissed the motion to post bond.[3]

We are cognizant that Section 1008(4) of the MPC, 53 P.S. §11008(4), provides a statutory exception to the general rule embodied in Pa. R.A.P. 1701(a), allowing the trial court to retain jurisdiction to require persons who are seeking to prevent a use or development of the

---

[3] Since we conclude that the motion to post bond was rendered moot by Judge PODCASY's order striking the underlying appeal, Pa. R.A.P. 1701(b) can provide no justification for the order to post bond. Rule 1701(b) was intended to correct *formal* errors in the papers, such as nonsubstantial technical amendments to an order, changes in the form of a decree, and modification of a verdict to add prejudgment interest. *See* 1 G. Darlington, K. McKeon, D. Schuckers, K. Brown, Pennsylvania Appellate Practice §1701:13 at 410 (1986). It was not intended to address a ten month delay in issuing a decision.

land of another to post bond in order to proceed with an appeal to the Commonwealth Court. However, this exception is applicable only where no bond was sought during the pendency of the appeal before the Court of Common Pleas.

First, no motion was made by either Stop 'N Go or the ZHB to require Farmland to post bond in order to proceed with the appeal *to this court*. Second, since Stop 'N Go did file a motion to require bond *in the trial court*, the exception embodied in MPC Section 1008 does not apply.

Accordingly, we must reverse the order of the trial court requiring that Farmland post bond.

ORDER

AND NOW, September 14, 1987, the order of the Court of Common Pleas of Luzerne County at 1044 C.D. 1986 is affirmed. The order of the Court of Common Pleas of Luzerne County at 2095 C.D. 1986 is reversed.